IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-40-BO

| | | |
|---|---|---|
| DANIEL BITTLE-LINDSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| SEEGARS FENCE COMPANY, INC. and | ) | |
| SEEGARS FENCE COMPANY, INC. OF | ) | |
| NEWPORT, | ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the Court on defendants' motion for summary judgment. The matters have been fully briefed and are ripe for ruling. A hearing was held on Tuesday, October 27, 2020 at 2:00 p.m. in Raleigh, North Carolina. For the reasons that follow, defendants' motion for summary judgment is GRANTED.

BACKGROUND

On March 18, 2019, plaintiff Daniel Bittle-Lindsey filed the instant employment action alleging that he was subject to disparate treatment and retaliation related to his demotion and ultimate termination of his employment in violation of the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. § 12101 *et seq.* DE 1, ¶¶ 37–43. Plaintiff was employed by defendant Seegars at its Newport branch in April 2015, and he told a co-worker that he was HIV-positive shortly after beginning his employment. *Id.* ¶¶ 22–23. On April 22, 2015, defendant Seegars gave plaintiff a form stating that it had recently come to its attention that plaintiff had informed an employee that he was HIV-positive and asking him to check "yes" or "no" for

whether he was HIV-positive. *Id.* ¶ 24. Plaintiff checked the box indicated that he was HIV-positive in front of a manager and a witness. *Id.* On the same date, defendant Seegars was placed on leave, and defendant Seegars sent a letter to plaintiff's doctor expressing concern about plaintiff's HIV-positive status and asking for the doctor's input on plaintiff's ability to safely perform his job duties. *Id.* ¶¶ 25–26. Upon authorization by plaintiff, plaintiff's doctor provided defendant Seegars with a letter on May 1, 2015 stating that plaintiff could safely "perform the job duties as any other employee." *Id.* ¶ 27.

On August 28, 2015, defendant Seegars allowed Bittle-Lindsey to return to work in a demoted position without similar opportunity for advancement, with fewer hours, and with the requirement that plaintiff always wear protective equipment. *Id.* ¶ 29–30. The required protective equipment included gloves, long-sleeve shirts, long pants, safety shoes with steel toes, and a face shield when cutting metal straps or handling loose wire, even though plaintiff consistently worked outside. *Id.* ¶ 30. No other employee was required to wear this protective equipment. *Id.* Plaintiff was also prohibited from entering the air-conditioned office to cool off or drink water, a restriction that was not imposed on any other employee. *Id.* ¶ 31. On August 31, 2015, plaintiff notified defendant Seegars that he would not accept the demotion, and defendant Seegars subsequently terminated plaintiff's employment. *Id.* ¶¶ 32–33.

In addition to bringing claims for disparate treatment and retaliation in violation of the ADA, plaintiff alleges that defendant Newport, which hired him, is "a mere instrumentality of Seegars Corporate and/or its common shareholders." *Id.* ¶ 35. Plaintiff asks this Court to disregard defendant Newport's corporate form and allow him to proceed against both defendants by piercing the corporate veil. *Id.* ¶ 36. On July 3, 2020, defendants filed the instant motion for summary judgment, arguing that defendant Newport is entitled to summary judgment because it

did not employ fifteen or more employees during the relevant period and that defendant Seegars is entitled to summary judgment because it would be improper to pierce the corporate veil and allow a claim against defendants collectively. DE 25.

## DISCUSSION

Defendants have moved for summary judgment in their favor on all claims. A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all

3

factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

The ADA prohibits employers from discriminating because of an employee's disability and retaliating against an employee based on an employee's engagement in protected activity. *See generally* 42 U.S.C. §§ 12112(a), 12203(a). The ADA defines "employer" as a person or entity "engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A). The fifteen-employee numerosity requirement is a threshold element of any plaintiff's claim under the ADA. *See Arbraugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006).

In this case, plaintiff was employed from April to August 2015. Defendants state that during the entire calendar year of 2015, defendant Newport employed fewer than fifteen employees. DE 26 ¶ 31. Plaintiff argues in its brief that because plaintiff has consistently alleged that defendant employed at least fifteen employees and defendant has made contradictory statements about its number of employees, a reasonable jury could find that defendant Newport employed at least fifteen employees during 2015. However, during the hearing, plaintiff appeared to have abandoned this argument, and instead admitted that the only way to receive relief in this action is for the Court to decide to pierce the corporate veil and proceed against both defendants jointly. Therefore, this Court determines that defendant Newport is entitled to summary judgment in its favor on the issue of whether it employed fewer than fifteen employees throughout the relevant period and turns to the issue of piercing the corporate veil.

A corporate business organization generally "affords [its] shareholder[s] a veil of protection from the corporation's liabilities," but a court can disregard the corporate form and impose liability through the alter-ego theory under certain circumstances. *Mayes v. Moore*, 419 F.

4

Supp. 2d 775, 781 (M.D.N.C. 2006). A decision to pierce the corporate veil must be made "reluctantly and cautiously," but this option is available "when justice so requires." *Keffer v. H.K. Porter Co.*, 872 F.2d 60, 64 (4th Cir. 1989). In making this decision, this Court could apply either federal common law or state law standards, "as no case law directly states this [C]ourt must apply federal common law to this situation, and the Supreme Court, in other federal law, recognizes, without criticism, that circuits split on whether to apply federal law or borrow state law in veil piercing within a federal claim." *Mayes*, 419 F. Supp. 2d at 782, n.5 (citing *United States v. Bestfoods*, 524 U.S. 51, 63, n.9 (1998)). However, the basic veil-piercing principles are the same under both federal common law and North Carolina law. *Miceli v. KBRG of Statesville, LLC*, No. 5:05CV265-V, 2010 U.S. Dist. LEXIS 91636, at *7, n.4 (W.D.N.C. Sept. 1, 2010) (citation omitted); *Mayes*, 419 F. Supp. 2d at 780. Thus, because there is no conflict between federal and state law here, there is no reason for the Court to definitively decide which law applies. *Id.* at 780, n.5 (citing *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 265–68 (D. Del. 1989).

To pierce the corporate veil, a plaintiff must show: (1) "control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice . . . so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that defendant used such control "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights;" and (3) that the control and breach of duty proximately caused the injury or unjust loss complained of. *Krausz Indus. v. Smith-Blair, Inc.*, 188 F. Supp. 3d 545, 556 (E.D.N.C. 2016) (citing *Glenn v. Wagner*, 313 N.C. 450, 455 (1985)). The burden of showing these elements rests on the party advocating for the disregard of the corporate fiction.

5

*GAVCO, Inc. v. Chem-Trend, Inc.*, 81 F. Supp. 2d 633, 643 (W.D.N.C. 1999) (citing *De Witt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976)).

In considering whether to pierce the corporate veil and disregard the corporate form, the Fourth Circuit considers multiple factors to determine whether entities truly function as separate corporations, or whether they exist merely as alter egos of one another. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013). These factors include gross undercapitalization; insolvency; siphoning of funds; failure to observe corporate formalities and maintain proper corporate records; non-functioning of officers; control by a dominant stockholder; injustice or fundamental unfairness; intermingling of funds; overlap in ownership, officers, directors, and other personnel; common office space; the degrees of discretion shown by the allegedly-dominated corporation; and whether the deals of the entities are at arm's-length. *Id.* In applying the alter-ego doctrine, courts are concerned with reality and not form. *DeWitt*, 540 F.2d at 685. Courts do not focus on the presence or absence of a single factor, but instead apply the doctrine flexibly to avoid injustice. *Saniri v. Christenbury Eye Ctr., P.A.*, No. 3:17-cv-00474-FDW-DSC, 2017 U.S. Dist. LEXIS 199765, at *9 (W.D.N.C. Dec. 5, 2017) (citation omitted).

Here, even assuming that defendant Seegars has complete domination over defendant Newport, such that defendant Newport has no separate existence, plaintiff fails to show the existence of the second requirement. In order to meet the second requirement, plaintiff must either show fraud or show that the actions served "an ulterior purpose to benefit the person in control in a way not possible or legal without misuse of the controlled corporation." *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 350 (M.D.N.C. 1995). A putative employer's legal violation is not enough to meet this requirement. *Saniri*, 2017 U.S. Dist. LEXIS 199765 at *8 (finding that a Title VII violation was not sufficient to warrant piercing the corporate veil). Instead,

6

the plaintiff must show that there was some abuse of the corporate form and that it is necessary to pierce the corporate veil to prevent injustice or fundamental unfairness. *Id.* (citations omitted). Acts that have previously been found to meet that requirement include: (1) operating the subsidiary so it had no assets to pay future debts, (2) unilaterally voiding contracts of the controlled corporation to the detriment of creditors, (3) operating a subsidiary so that a finance company could evade the usury laws, (4) failing to obtain required workers' compensation coverage for employees, and (5) depleting corporate assets to pay personal debts. *Dassault Falcon*, 909 F. Supp. at 350 (citations omitted).

Although plaintiff has the burden of showing that piercing of the corporate veil is necessary, plaintiff neglects to argue that defendants used control to affect a fraud or wrong or that such control and breach proximately caused plaintiff's harm, and this Court is unable to find that these elements have been met based on the facts presented. Plaintiff argues that the three executives of defendant Seegars are officers of every single branch entity, including defendant Newport, in either a president or vice president role, although they functionally act as consultants. These officers are paid by defendant Seegars, and they do not receive a payment from defendant Newport for their officer roles in the branch. Furthermore, plaintiff states that defendant Newport's corporate meetings from 2015–19 were attended by the same four individuals, all of whom signed as a director and shareholder of defendant Newport, although plaintiff alleges that none of these individuals were a director or shareholder of defendant Newport, at least in 2015 and 2016. Defendant Seegars drafted the meeting minutes using the same template used by every other Seegars branch entity for its annual meeting. Plaintiff further alleges that even where defendant Seegars claims that branch entities retain complete autonomy and authority as to all of their operations, branch entities like defendant Newport mirror the actions and recommendations of

7

defendant Seegars almost unfailingly. Finally, plaintiff argues that the branch entities do not operate at arm's-length, instead having defendant Seegars offer an extensive array of services to the branch entities without making a profit of its own, and that the branch entities have an agreement not to compete with each other.

Even considering these facts in the light most favorable to plaintiff, plaintiff has not plead sufficient factual allegations supporting a claim that this Court should pierce the corporate veil and hold defendant Seegars liable for the actions of defendant Newport or aggregate the number of defendants' employees. *See Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356 (7th Cir. 2016) (declining to pierce the corporate veil where the companies shared similar names, directors, a website, and board members; held each other out as the same company; and centralized several services, such as employee performance review, the personnel manual, and the computer program for tracking inventories); *see Burnette v. Austin Med., Inc.*, No. 1:11cv52, 2011 U.S. Dist. LEXIS 43027, at *14 (W.D.N.C. Apr. 14, 2011) (declining to pierce the corporate veil when the complaint lacked allegations that defendant was undercapitalized, co-mingled assets, or took any other actions disregarding the corporate form). It is undisputed that defendant Newport is fully capitalized as an independent business that generates a healthy profit, and it is agreed that defendant Newport pays dividends to its owners, which are distributed proportionately based on ownership shares. It is not disputed that defendant Newport pays relatively minimal fees to defendant Seegars for its services, which relates to whether defendant Seegars siphons defendant Newport's funds; that there is no overlap in personnel between the defendants, as defendant Newport's employees have never directly or indirectly worked for defendant Seegars; and that defendants do not share office space, with defendant Newport renting its own space from an entity unaffiliated with defendant Seegars. Furthermore, there is no intermingling of funds, and only

8

Clinton Rouse can authorize expenditures for defendant Newport. Clinton Rouse owns fifty percent of Newport and exercises unilateral control of the corporation's day-to-day operations, even though three minority shareholders of defendant Newport are also shareholders of defendant Seegars. Defendants argue that defendant Newport is free to market, brand, advertise, and otherwise promote its services without coordinating with or seeking or receiving any authorization from defendant Seegars, and that defendant Seegars has no involvement in the management, control, or oversight of Newport's employees. Based on these facts and the lack of sufficient allegations that defendant Newport was undercapitalized, that defendant Seegars co-mingled assets, or that the defendant otherwise disregarded the corporate form, plaintiff has failed to show that piercing the corporate veil is necessary to prevent fraud or injustice. Therefore, the Court grants defendants' motion for summary judgment.

This conclusion is further supported by the fact that courts have previously found that franchisors could not be held liable for the actions of franchisees simply because the franchisor sets rules, shares names with, and provides marketing and other services for franchisees. The Tenth Circuit declined to hold McDonald's responsible for a violation of Title VII of the Civil Rights Act of 1967, 42 U.S.C.S. §§ 2000e to 2000e-17, by one of its franchisees because McDonald's lacked control over labor relations with the franchisee's employees and financial control over the franchisee. *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991). The Court found there was insufficient control to consider McDonald's an employer of its franchisee's employees under Title VII even when McDonald's stringently controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise employees. *Id.* Title VII defines "employer" similarly to the ADA, requiring fifteen or more employees for each working day in each of two or more calendar weeks. 42 U.S.C.S. § 2000e. Therefore, allowing

9

plaintiff to pierce the corporate veil in this case would be inconsistent with prior rulings dealing with similar situations.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [DE 24] is GRANTED. Summary judgment on all claims is entered in favor of the defendants.

SO ORDERED, this __9__ day of December, 2020.

*Terrence Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE